# SUPREME COURT OF THE UNITED STATES

### JOSEPH A. KENNEDY *v.* BREMERTON SCHOOL DISTRICT

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 18–12.  Decided January 22, 2019

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO, with whom JUSTICE THOMAS, JUSTICE GORSUCH, and JUSTICE KAVANAUGH join, respecting the denial of certiorari.

I concur in the denial of the petition for a writ of certiorari because denial of certiorari does not signify that the Court necessarily agrees with the decision (much less the opinion) below.  In this case, important unresolved factual questions would make it very difficult if not impossible at this stage to decide the free speech question that the petition asks us to review.

I

Petitioner Joseph Kennedy claims that he lost his job as football coach at a public high school because he engaged in conduct that was protected by the Free Speech Clause of the First Amendment.  He sought a preliminary injunction awarding two forms of relief: (1) restoration to his job and (2) an order requiring the school to allow him to pray silently on the 50-yard line after each football game.  The latter request appears to depend on petitioner's entitlement to the first—to renewed employment—since it seems that the school would not permit members of the general public to access the 50-yard line at the relevant time.

The key question, therefore, is whether petitioner showed that he was likely to prevail on his claim that the termination of his employment violated his free speech rights, and in order to answer that question it is necessary

to ascertain what he was likely to be able to prove regarding the basis for the school's action. Unfortunately, the answer to this second question is far from clear.

On October 23, 2015, the superintendent wrote to petitioner to explain why the district found petitioner's conduct at the then-most recent football game to be unacceptable. And in that letter, the superintendent gave two quite different reasons: first, that petitioner, in praying on the field after the game, neglected his responsibility to supervise what his players were doing at that time and, second, that petitioner's conduct would lead a reasonable observer to think that the district was endorsing religion because he had prayed while "on the field, under the game lights, in BHS-logoed attire, in front of an audience of event attendees." 869 F. 3d 813, 819 (CA9 2017). After two subsequent games, petitioner again kneeled on the field and prayed, and the superintendent then wrote to petitioner, informing him that he was being placed on leave and was forbidden to participate in any capacity in the school football program. The superintendent's letter reiterated the two reasons given in his letter of October 23. And the district elaborated on both reasons in an official public statement explaining the reasons for its actions.

When the case was before the District Court, the court should have made a specific finding as to what petitioner was likely to be able to show regarding the reason or reasons for his loss of employment. If the likely reason was simply petitioner's neglect of his duties—if, for example, he was supposed to have been actively supervising the players after they had left the field but instead left them unsupervised while he prayed on his own—his free speech claim would likely fail. Under those circumstances, it would not make any difference that he was praying as opposed to engaging in some other private activity at that time. On the other hand, his free speech claim would have

far greater weight if petitioner was likely to be able to establish either that he was not really on duty at the time in question or that he was on duty only in the sense that his workday had not ended and that his prayer took place at a time when it would have been permissible for him to engage briefly in other private conduct, say, calling home or making a reservation for dinner at a local restaurant.

Unfortunately, the District Court's brief, informal oral decision did not make any clear finding about what petitioner was likely to be able to prove. Instead, the judge's comments melded the two distinct justifications:

> "He was still in charge. He was still on the job. He was still responsible for the conduct of his students, his team. . . . And a reasonable observer, in my judgment, would have seen him as a coach, participating, in fact leading an orchestrated session of faith . . . ." App. to Pet. for Cert. 89.

The decision of the Ninth Circuit was even more imprecise on this critical point. Instead of attempting to pinpoint what petitioner was likely to be able to prove regarding the reason or reasons for his loss of employment, the Ninth Circuit recounted all of petitioner's prayer-related activities over the course of several years, including conduct in which he engaged as a private citizen, such as praying in the stands as a fan after he was suspended from his duties.

If this case were before us as an appeal within our mandatory jurisdiction, our clear obligation would be to vacate the decision below with instructions that the case be remanded to the District Court for proper application of the test for a preliminary injunction, including a finding on the question of the reason or reasons for petitioner's loss of employment. But the question before us is different. It is whether we should grant discretionary review, and we generally do not grant such review to decide highly

fact-specific questions. Here, although petitioner's free speech claim may ultimately implicate important constitutional issues, we cannot reach those issues until the factual question of the likely reason for the school district's conduct is resolved. For that reason, review of petitioner's free speech claim is not warranted at this time.

## II

While I thus concur in the denial of the present petition, the Ninth Circuit's understanding of the free speech rights of public school teachers is troubling and may justify review in the future.

The Ninth Circuit's opinion applies our decision in *Garcetti* v. *Ceballos*, 547 U. S. 410 (2006), to public school teachers and coaches in a highly tendentious way. According to the Ninth Circuit, public school teachers and coaches may be fired if they engage in any expression that the school does not like while they are on duty, and the Ninth Circuit appears to regard teachers and coaches as being on duty at all times from the moment they report for work to the moment they depart, provided that they are within the eyesight of students. Under this interpretation of *Garcetti*, if teachers are visible to a student while eating lunch, they can be ordered not to engage in any "demonstrative" conduct of a religious nature, such as folding their hands or bowing their heads in prayer. And a school could also regulate what teachers do during a period when they are not teaching by preventing them from reading things that might be spotted by students or saying things that might be overheard.

This Court certainly has never read *Garcetti* to go that far. While *Garcetti* permits a public employer to regulate employee speech that is part of the employee's job duties, we warned that a public employer cannot convert private speech into public speech "by creating excessively broad job descriptions." *Id.,* at 424. If the Ninth Circuit contin-

ues to apply its interpretation of *Garcetti* in future cases involving public school teachers or coaches, review by this Court may be appropriate.

What is perhaps most troubling about the Ninth Circuit's opinion is language that can be understood to mean that a coach's duty to serve as a good role model requires the coach to refrain from any manifestation of religious faith—even when the coach is plainly not on duty. I hope that this is not the message that the Ninth Circuit meant to convey, but its opinion can certainly be read that way. After emphasizing that petitioner was hired to "communicate a positive message through the example set by his own conduct," the court criticized him for "his media appearances and prayer in the BHS bleachers (while wearing BHS apparel and surrounded by others)." 869 F. 3d, at 826. This conduct, in the opinion of the Ninth Circuit, "signal[ed] his intent to send a message to students and parents about appropriate behavior and what he values as a coach." *Ibid.* But when petitioner prayed in the bleachers, he had been suspended. He was attending a game like any other fan. The suggestion that even while off duty, a teacher or coach cannot engage in any outward manifestation of religious faith is remarkable.

### III

While the petition now before us is based solely on the Free Speech Clause of the First Amendment, petitioner still has live claims under the Free Exercise Clause of the First Amendment and Title VII of the Civil Rights Act of 1964. See Brief in Opposition 11, n. 1. Petitioner's decision to rely primarily on his free speech claims as opposed to these alternative claims may be due to certain decisions of this Court.

In *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872 (1990), the Court drastically cut back on the protection provided by the Free Exercise

Clause, and in *Trans World Airlines, Inc.* v. *Hardison*, 432 U. S. 63 (1977), the Court opined that Title VII's prohibition of discrimination on the basis of religion does not require an employer to make any accommodation that imposes more than a *de minimis* burden. In this case, however, we have not been asked to revisit those decisions.